Commonwealth *vs.* George Albert Cameron, Jr.

Worcester.   December 7, 1981. — March 29, 1982.

Present: Hennessey, C.J., Liacos, Abrams, Nolan, Lynch, & O'Connor, JJ.

*Constitutional Law*, Admissions and confessions, Waiver. *Evidence*, Admissions and confessions, Expert opinion. *Practice, Criminal*, Argument by counsel, Argument by prosecutor, Examination of jurors, Mistrial, Capital case, Sentence. *Homicide. Arson.*

Evidence at a hearing on a motion to suppress was sufficient to warrant findings that the defendant, a mentally deficient adult, had the mental capacity to make an intelligent, knowing waiver of his Miranda rights and that his confession was voluntary. [664-666]

At a murder trial, there was no merit to the defendant's argument that a court-appointed psychiatrist was not qualified, on the basis of one interview with the mentally deficient defendant, to give his opinion on the defendant's ability to waive his Miranda rights. [666]

Evidence at a murder trial was sufficient to warrant the denial of the defendant's motions for a directed verdict. [666-667]

At a criminal trial, the judge did not abuse his discretion in restricting defense counsel's closing argument to thirty minutes. [667]

At the trial of indictments charging murder and arson, the judge did not abuse his discretion in refusing to question prospective jurors as to whether they or their families had affiliations with a police or fire department. [667]

A judge did not abuse his discretion in ruling that a prospective juror stood indifferent where he had the opportunity to observe the prospective juror and to explore the possibility of partiality. [667-668]

At a criminal trial, the judge's denial of the defendant's motion for a mistrial based on prejudicial publicity created no substantial risk of a miscarriage of justice where the judge found that the article was fair reporting and presented only material that had already been presented to the jury, and where he instructed the jury not to read or listen to media reports of the trial. [668-669]

The closing argument of a prosecutor did not so unfairly prejudice the defendant as to cause a miscarriage of justice, notwithstanding remarks by the prosecutor that characterized the police witnesses as "classy guys"

and "top notch" witnesses, the defense witnesses as "liars" and the defendant's alibi as a recent contrivance. [669-670]

A defendant convicted of murder in the second degree on six indictments comprehending murder in the first degree, and on two indictments charging arson, was not entitled to a new trial or the entry of a verdict of a lesser degree of guilt under G. L. c. 278, § 33E; however, this court revised that portion of the sentence requiring the defendant to serve a consecutive term of imprisonment on one of the arson indictments, the underlying felony on the murder indictments, by ordering that such sentence be served concurrently with the sentences imposed on the murder indictments; the judge acted within his discretion in imposing a consecutive sentence on the second arson indictment charging the burning of an adjacent building, a separate offense. [670-671]

INDICTMENTS found and returned in the Superior Court on June 25, 1976.

The cases were tried before *Sullivan*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Theodore C. Garabedian* for the defendant.

*Lynn Morrill Turcotte*, Assistant District Attorney, for the Commonwealth.

LYNCH, J.  On November 22, 1976, the defendant, George Albert Cameron, Jr., was convicted of murder in the second degree on six indictments comprehending murder in the first degree.  He was also convicted on two indictments charging arson.  On the murder convictions, the defendant was sentenced to six concurrent terms of life imprisonment at the Massachusetts Correctional Institution at Walpole.  The judge imposed two sentences of ten to fifteen years on the arson convictions, to be served concurrently with each other from and after the sentences on the murder convictions.  The defendant filed a notice of appeal, and we transferred the case to this court on our own motion.[1]

---

[1] The offenses charged in the murder indictments occurred prior to July 1, 1979. See *Commonwealth* v. *Davis*, 380 Mass. 1, 13-17 (1980).

In the early hours of April 2, 1976, a fire destroyed an apartment house in Worcester, killing six people. On April 14, 1976, the defendant was brought to the police station for questioning. During the interview, he signed a statement which admitted, in substance, that he and a friend, Michael Moody, had set the fire.

On appeal, the defendant purports to assert twenty-two assignments of error. Only five issues are properly before the court. The remaining assignments have been either raised for the first time on appeal, with no objection or exception taken at trial, or presented in the defendant's brief with no authority or transcript references. See *Commonwealth* v. *Johnson*, 379 Mass. 177, 178 (1979); *Commonwealth* v. *Richard*, 377 Mass. 64, 65 (1979). It follows that there is nothing before this court on these claims except the defendant's request that we consider exercising our power under G. L. c. 278, § 33E.

Of the five claims fully before this court, the principal argument is that the defendant did not have the mental capacity to make an intelligent, knowing waiver of his Miranda rights and that the inculpatory statements were involuntary. We disagree.

The following summary of what transpired at the police station is based on the findings of the trial judge made after a hearing on the defendant's oral motion to suppress the inculpatory statements. The evidence at trial was essentially the same as the evidence introduced at the suppression hearing. We note that neither the judge nor the jury accepted the defendant's version of what occurred at the police station.[2]

---

[2] The defendant testified both at the voir dire hearing and at trial that he was not told that the police wanted to question him about the fire and that he believed they were questioning him because he had stolen a car earlier that day. He further testified that his statement concerning his activities with Moody related to the day he was picked up for questioning and not the day of the fire. He denied any involvement in the fire and stated that he did not know what he signed at the station because the police just "stuck [the papers] all in front of [him]" and said, "sign them."

At approximately 10 P.M. on April 14, 1976, a Worcester police officer was sent to the defendant's home to bring him in for questioning. The officer knew only that the defendant might have some information concerning the fire of April 2. The officer was met at the door by the defendant's mother, who invited him in. He asked the defendant if he would come to the station for questioning with respect to the fire. The defendant agreed to go.

At the police station, the defendant was brought into an office in the arson division. Sergeant Dubrule, who knew the defendant and had given him Miranda warnings on previous occasions, informed him of his Miranda rights and his right to a telephone call under G. L. c. 276, § 33A. Dubrule further explained each right after reading it. The sergeant then left the office and returned a short time later with a typewritten copy of the warnings. He again read them to the defendant, who indicated that he understood each right and signed the form. Sergeant Dubrule left, and two other officers questioned the defendant. Prior to questioning, one of the officers again read the Miranda rights to the defendant, who again indicated that he understood his rights but was still willing to talk to the police.

The officers then played a tape of a call from a fire box in which the speaker told the fire department dispatcher to get to the corner of Cambridge and Douglas Streets because "I just lit." After hearing the tape, and prior to any questioning by the police, the defendant identified the voice as his own. After this admission, the officers asked him to relate his activities leading up to the time of the fire. One of the officers took handwritten notes, which the defendant signed at approximately 11:30 P.M. At this time, the defendant was arrested. A typewritten copy of the statement was prepared and given to the defendant to sign. He looked at it for a short time, then informed the officers that he did not read well. One of the officers read the statement to the defendant, who signed it without corrections.

After arraignment, the defendant was committed to Bridgewater State Hospital for psychiatric examination.

The examining psychiatrist testified at the suppression hearing that the defendant's I.Q. was 83, representing a composite of a 73 verbal I.Q. and a 98 performance I.Q. The psychiatrist concluded, on the basis of his forty-five minute interview with the defendant, that although the defendant was on the borderline of mental retardation, he had the requisite intelligence to understand fully the nature and the substance of his rights.

The defendant asserts that, because he is mentally deficient, he was incapable of making a knowing and intelligent waiver of his rights without the assistance of his family or a lawyer. He additionally claims that his confession was not voluntary in that the police conduct was inherently coercive.

Where a defendant, without the presence of counsel, makes statements to the police during a custodial interrogation,[3] the State bears a heavy burden of proving that there was a knowing, intelligent, and voluntary waiver of Miranda rights. *Commonwealth* v. *Garcia*, 379 Mass. 422, 428 (1980). *Miranda* v. *Arizona*, 384 U.S. 436, 475 (1966). Every reasonable presumption against waiver will be indulged. *Commonwealth* v. *Hooks*, 375 Mass. 284, 288 (1978). A confession can be voluntary only if the suspect actually understands the impact of each Miranda warning. See *Miranda, supra* at 467-476; *Commonwealth* v. *Williams*, 378 Mass. 217, 225 (1979). In some circumstances, such understanding may be inferred from a suspect's outward behavior. *Commonwealth* v. *Garcia, supra* at 429-430. The reviewing court, however, must scrutinize the record with special care when the suspect has a diminished or subnormal mental capacity. *Commonwealth* v. *Daniels*, 366 Mass. 601, 606 (1975).

---

[3] The defendant argues that the police deceived him into leaving his home and that he was effectively in custody from the time the officer appeared at his door. The record does not support such a contention. Nevertheless, assuming arguendo that the defendant was in custody at the time he was taken from his home, there is no indication that his rights were violated since he was not questioned until after he arrived at the station and received Miranda warnings.

A mentally deficient adult may make an effective waiver of his rights and render a voluntary, knowing, and admissible confession. *Id.* The court must, however, examine the totality of the circumstances leading up to the waiver, including the characteristics and behavior of the suspect and the details of the interrogation. *Schneckloth* v. *Busta-monte,* 412 U.S. 218, 226 (1973). *Commonwealth* v. *Hooks,* 375 Mass. 284, 289 (1978). Circumstances and techniques of custodial interrogation which may pass constitutional muster when applied to a normal adult may not be constitutionally tolerable when applied to one who is mentally deficient. *Commonwealth* v. *Daniels, supra* at 606. See *United States* v. *Blocker,* 354 F. Supp. 1195, 1200 (D.D.C. 1973).

We have reviewed the evidence presented to the judge at the suppression hearing. We conclude that there was sufficient evidence to warrant the subsidiary facts found by the judge involving the credibility of oral testimony. *Commonwealth* v. *Garcia,* 379 Mass. 422, 427 (1980). We also conclude that the defendant knowingly, voluntarily and intelligently waived his Miranda rights.

The defendant was read his rights three times. During at least one reading, the officer rephrased the rights in simplified language. Each time he did this, he asked the defendant if he understood the rights and received affirmative answers. The atmosphere, at the time the defendant was read his rights, was informal and relaxed: Sergeant Dubrule, who knew the defendant's family, asked how his mother was doing. The defendant had prior contact with the law. The defendant also had some worldly experience in the Army. See *Commonwealth* v. *Davis,* 380 Mass. 1, 6 (1980). On this record we cannot say that the defendant's limited intelligence precluded him from making an effective waiver of his rights.[4] Nor does the record support the de-

---

[4] The defendant relies on *Commonwealth* v. *Cain,* 361 Mass. 224 (1972), to support his contention that his waiver was involuntary because he was denied access to his family. The *Cain* case is inapposite to the

fendant's contention that, when viewed in the totality of the circumstances, the confession was involuntary.

The defendant also argues, for the first time on appeal, that the court-appointed psychiatrist was not qualified, on the basis of one interview with the defendant, to give his opinion on the defendant's ability to waive his rights. We consider this asserted error only to determine whether there is a substantial risk of a miscarriage of justice. *Commonwealth* v. *Garcia*, 379 Mass. 422, 439 (1980). The record clearly indicates that defense counsel wanted this witness to testify on the defendant's capacity to waive his rights. The testimony of the psychiatrist reflects a careful qualification of his opinion and an acknowledgment of the variables which could affect the opinion. Such evidence satisfies the requirements of *Commonwealth* v. *Daniels*, 366 Mass. 601, 609 (1975).[5]

The defendant contends that his motions for directed verdict, made at the close of the Commonwealth's case and at the close of the evidence, were improperly denied.[6] He grounds this argument solely on the allegation that the admission of the inculpatory statements was error. We therefore review the evidence in light of our holding that the statements were admissible. We conclude that the evidence,

---

case at bar in that it involved a juvenile who had no prior experience with police practices. Additionally, in *Cain* there was evidence that the minor's father was deliberately denied access to his son at the police station. No such evidence is presented on this record.

[5] In *Daniels*, this court said that expert evidence should be presented to the trier of fact to aid in the evaluation of the effect of custodial interrogation on a mentally deficient defendant. *Commonwealth* v. *Daniels*, 366 Mass. 601, 608-609 (1975).

We note that the judge, in a discussion with counsel at side bar, pointed to the requirements of the *Daniels* case and, noting that such evidence of mental deficiency might be a "two-edged sword," explicitly asked defense counsel if he wanted the doctor to testify on this point and if he was willing to accept all consequences from such evidence being admitted. The defense counsel answered affirmatively.

[6] The judge directed a verdict on so much of the indictments as charged murder in the first degree.

viewed in the light most favorable to the Commonwealth, was sufficient to enable a jury to conclude, upon all the established circumstances and warranted inferences, that the guilt of the defendant was proven beyond a reasonable doubt. *Commonwealth* v. *Clifford*, 374 Mass. 293, 296-297 (1978). *Commonwealth* v. *Vellucci*, 284 Mass. 443, 445 (1933).

We turn to the defendant's claim that the judge abused his discretion in restricting counsel's closing argument to thirty minutes. The judge is given broad discretion in limiting the time of closing argument. Rule 68 of the Superior Court (1974). *Commonwealth* v. *Mahar*, 6 Mass. App. Ct. 875, 876 (1978). In this case, the issues were not complex and defense counsel had ample time to cover the essential aspects of the case within the thirty-minute limitation. We find no abuse of discretion.

The remaining assignments of error are either raised for the first time on appeal or inadequately briefed under Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). We therefore review these claims to determine only whether there is a substantial risk of a miscarriage of justice. *Commonwealth* v. *Garcia*, 379 Mass. 422, 439 (1980). *Commonwealth* v. *Richard*, 377 Mass. 64, 65 (1979).

1. *Juror selection process.* The defendant claims error in the judge's refusal to question prospective jurors as to whether they or their families had affiliations with a police or fire department. Such a question, designed to detect a pro-police attitude, need not be asked merely because it was requested by the defendant. *Commonwealth* v. *Pinckney*, 365 Mass. 70, 72 (1974). *Commonwealth* v. *Taylor*, 327 Mass. 641, 647 (1951). It is within the sound discretion of the judge whether to allow any questions other than those which are statutorily required under G. L. c. 234, § 28. *Commonwealth* v. *Stewart*, 359 Mass. 671, 677 (1971). We find no abuse of discretion.

The defendant also challenges the judge's ruling that a prospective juror stood indifferent. The juror had initially stated that she did not know whether what she had read

about the crime would affect her impartiality.[7]  Further examination of this juror by the judge elicited her belief that she could decide the case solely on the evidence.  Where, as here, the judge had the opportunity to observe the prospective juror and to explore the possibility of partiality, we cannot say that he abused his discretion.  *Commonwealth* v. *Amazeen*, 375 Mass. 73, 83 (1978).

2. *Motion for a mistrial.*  The defendant also assigns as error the judge's denial of his motion for a mistrial based on prejudicial publicity and on the fact that three jurors had walked through the courtroom during the suppression hearing.  We find no merit in these claims.

A trial judge has broad discretion in handling trial publicity.  *Commonwealth* v. *Jackson*, 376 Mass. 790, 799 (1978).  *Commonwealth* v. *Egan*, 357 Mass. 585, 588-589 (1970).  The judge in the instant case explicitly found that the article was merely fair reporting and presented only material that had already been presented to the jury.  After hearing arguments on the motion, the judge repeated his previous instruction to the jury not to read or listen to media reports of the trial.  Jurors are expected to follow instructions to disregard matters withdrawn from their consideration.  *Commonwealth* v. *Crehan*, 345 Mass. 609, 613 (1963).  We conclude that the judge's denial of the motion for a mistrial created no substantial risk of a miscarriage of justice.[8]

---

[7] When asked in what way the article which she had read several months earlier might affect her impartiality, she answered, "Well, just the horrendousness of the whole thing when you think of the loss and death of one family."

[8] We note that in *Commonwealth* v. *Jackson*, 376 Mass. 790 (1978), this court established prospectively the procedure which should be followed when a claim of potentially extraneous influence on a jury is brought to the judge's attention after the jury are selected.  The judge must first determine whether the material goes beyond the record and raises a serious question of possible prejudice.  If the judge finds that the material raises a serious question of possible prejudice, a voir dire of the jurors should be conducted.  The initial inquiry into whether any juror saw or heard the material may be conducted collectively, but if any juror indi-

The second ground asserted by the defendant in his motion for a mistrial was based on the fact that three jurors walked through the courtroom, on their way to the jury room, during the suppression hearing. We note that the defendant's motion for a mistrial was made the day after the incident and was, therefore, untimely. *Commonwealth* v. *DiPietro*, 373 Mass. 369, 387 (1977). We review this claim pursuant to our power under G. L. c. 278, § 33E, and conclude that there was no substantial risk of a miscarriage of justice where the judge terminated all questioning in the hearing until the jurors were out of the room.

3. *Prosecutor's closing argument.* The defendant claims that, during his closing argument, the prosecutor created prejudicial error by characterizing the police witnesses as "classy guys" and "top-notch" witnesses, the defense witnesses as "liars," and the defendant's alibi as a recent contrivance. He also claims that the prosecutor made flagrant remarks attacking the character of defense counsel and the defendant.[9] No objection or exception was taken at trial. We therefore read the argument as a whole, in conjunction with the judge's charge, to determine whether it so unfairly prejudiced the defendant as to cause a miscarriage of justice. *Commonwealth* v. *Ferreira*, 381 Mass. 306, 317 (1980). *Commonwealth* v. *Earltop*, 372 Mass. 199, 204 (1977).

There was no error in permitting the prosecutor to argue that the defense was contrived. The question of credibility of the witness was fundamental to the trial. *Commonwealth* v. *MacDonald (No. 1)*, 368 Mass. 395, 400-401 (1975). Nor was it error to permit the prosecutor to respond

---

cates that he or she saw or heard the material, an individual voir dire, outside the presence of other jurors, must be conducted to determine the effect of the material on the juror's ability to render an impartial decision. *Id.* at 800-801.

[9] The remark which allegedly impugned the character of the defendant and defense counsel was, "I suggest that no one — not Mr. Garabedian, not Mr. Cameron — no one else is going to fool sixteen or the twelve citizens of our community that will hear this particular case."

to defense counsel's argument that the defense witnesses were not "liars"[10] or to imply that the defendant was attempting to "fool" them. The evidence supported the inference that the alibi may have been fabricated by the defense witnesses. *Commonwealth* v. *Fitzgerald,* 376 Mass. 402, 422 (1978).

4. *Evidentiary challenges.* The remaining assignments of error relate to various evidentiary rulings made by the judge. Since no objections or exceptions were taken at trial, we have reviewed these claims to determine whether the rulings created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Johnson,* 379 Mass. 177, 178 (1979). We find no error.

Finally, we note that we have carefully reviewed the entire record in accordance with our duties under G. L. c. 278, § 33E. We decline to use our power under that statute to order a new trial or to reduce the verdict. We use our power to revise only that portion of the sentence which requires the defendant to serve a consecutive term of imprisonment on the arson indictment which was the underlying felony on the murder indictments. *Commonwealth* v. *Wilson,* 381 Mass. 90, 124 (1980). *Commonwealth* v. *Stewart,* 375 Mass. 380, 390 (1978).

In ordering that the sentence on indictment no. 76350 be served concurrently with the sentences imposed on the murder indictments, we do not disturb the consecutive sentence imposed on arson indictment no. 76351, which charged the burning of a building adjacent to the one in which the six deaths occurred. The burning of the adjacent building was a separate offense, requiring proof of an additional element. *Commonwealth* v. *Stewart, supra* at 391. There was, therefore, no abuse in the judge's discretion in imposing a consecutive sentence on the second arson indictment.

---

[10] In his closing argument defense counsel anticipated the Commonwealth's attack on the credibility of the alibi witnesses and, in reviewing their testimony for the jury, repeatedly asked, "Are they liars? Everybody's a liar?"

The judgment of conviction on indictment no. 76350 is vacated; the indictment is remanded to the Superior Court for the imposition of a sentence to run concurrently with the sentences on the murder convictions.  The remaining judgments are affirmed.

*So ordered.*