## COMMONWEALTH *vs.* CURTIS S. TAYLOR, JR.

Essex.   October 7, 1986. — December 3, 1986.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Homicide. Constitutional Law,* Admissions and confessions, Waiver of constitutional rights. *Waiver. Practice, Criminal,* Voluntariness of statement.

Evidence at the hearing on a motion to suppress a statement made by a defendant to police officers warranted a finding that the defendant had made a knowing and intelligent waiver of his Miranda rights, and voluntarily made his statement, despite evidence that he had consumed some alcohol on the day he made his statement to the police, and despite the defendant's claim that, because he is unable to read and write, he was unable to make a knowing and intelligent waiver of his rights. [728-729]

A confession by a defendant charged with murder was not rendered inadmissible on the basis that police, who had previously given him adequate Miranda warnings, failed to readvise him of his rights following a twenty to forty-five minute break in the questioning, where there was no indication that the defendant either exercised his right to remain silent or asked for an attorney, and where the break in questioning was not lengthy, and appeared to have been the result of humanitarian considerations to permit the defendant to regain his composure. [729]

A statement by the defendant which was properly admitted at his trial on an indictment charging first degree murder, together with evidence apart from the statement, was sufficient to warrant the denial of the defendant's motion for a required finding of not guilty. [729]

INDICTMENT found and returned in the Superior Court Department on May 2, 1984.

A pretrial motion to suppress evidence was heard by *Peter F. Brady,* J., and the case was tried before *Robert A. Barton,* J.

*Thomas J. Barrett* for the defendant.

*Lila Heideman,* Assistant District Attorney (*Robert N. Weiner,* Assistant District Attorney, with her) for the Commonwealth.

HENNESSEY, C.J. The defendant was found guilty of murder in the first degree. He appeals from his conviction, asserting error in the admission of the statement he made to the police on the night of the murder. He also urges this court to exercise its special power under G. L. c. 278, § 33E (1984 ed.), to reduce his conviction of murder in the first degree to murder in the second degree or manslaughter. We conclude that there was no error, and decline to grant the relief requested under § 33E. We affirm.

The victim, Peter Bulger, was found stabbed to death on April 14, 1984. He was gagged and tied spread-eagled on his bed in his apartment at 145 Main Street in Peabody. He had been stabbed twenty times in the chest and abdomen, and had been sexually mutilated.

The defendant had met Bulger earlier in the day at a bar located across the street from Bulger's apartment. The defendant left the bar with Bulger. The two stopped at a package store, where they pooled their money and bought six quarts of beer, and then proceeded to Bulger's apartment.

Shortly after 8 P.M., Michael Binari, the owner of the bar, observed the defendant enter the bar and walk rapidly to the public telephone. Binari approached the defendant to request that he button and tuck in his shirt. The defendant had started to dial the telephone, and then hung up, telling Binari, "I'm nervous, I'm nervous. I've got to call somebody, but I'm afraid of the consequences." The defendant said that he had left a place where a man was tied up and covered with blood, and later said that he had a big fight and had gone home covered with blood. When the defendant stated that the place was across the street, Binari asked whether it was Peter Bulger's apartment, for Binari had seen Bulger and the defendant leave the bar together earlier in the day. The defendant admitted that it was. Binari and the defendant went across the street to Bulger's apartment, where Binari saw Bulger's body. Binari's wife telephoned the police from the bar.

Later that night, the police went to the apartment where the defendant lived, arriving at approximately 1 A.M. The defendant appeared sleepy but did not appear to any of the police

officers to be under the influence of alcohol or drugs. He accompanied the police to the Peabody police station, where a police officer read him his Miranda rights. The defendant began reciting the Miranda rights along with the police officer, who insisted on reading them to the defendant. The defendant indicated that he understood those rights, and signed the Miranda card.

The defendant first told the police that he had been at Bulger's apartment that afternoon, and that a large man with blond hair had entered the apartment, thrown the defendant into a chair, and grabbed Bulger. At this point, the defendant stated, Bulger threw him the keys to the apartment and asked him to come back later. The defendant stated that he left the apartment, and that when he returned, he found Bulger's body.

The police then asked if the defendant had hurt Bulger because Bulger wanted to have sex with him. The defendant did not respond at first, and then began shaking and said, "Yes, I did." At this point, the defendant put his head in his hands and began sobbing uncontrollably. The police officers told him to calm down, got him some water, and suspended their questioning while the defendant composed himself. The defendant sighed, and stated, "I don't know why I'm doing this, but I feel better."

After a break of between twenty and forty-five minutes, the interview resumed. The police did not readvise the defendant of his Miranda rights. The defendant admitted that there had been no "blond guy" at Bulger's apartment, and then gave a detailed statement, fully confessing the murder. The police wrote down this statement, and then handed it to the defendant. The defendant told them he could not read it, having only "a fourth grade reading level." The police read each page aloud to the defendant. The defendant signed each page, and initialed where he had indicated corrections. The police then formally arrested the defendant. They allowed him to telephone his sister, and overheard him say, "I told them. I told them what I did, and it feels better. It feels good. Thinking about dad didn't help. Either they kill me or I'll kill myself. I can't go on."

The defendant moved to suppress the written statement. The defendant argues that his statement to the police should not have been admitted in evidence. The defendant contends that, because he is unable to read or write, he was unable to make a knowing and intelligent waiver of his rights, and that his ingestion of alcohol and drugs precluded him from making a voluntary statement. Finally, the defendant asserts that the police were required to advise him of his rights again after the break in the questioning.

We note that the Commonwealth bears a heavy burden of proving that there was a knowing, intelligent, and voluntary waiver of Miranda rights. *Miranda* v. *Arizona,* 384 U.S. 436, 475 (1966). *Commonwealth* v. *Doucette,* 391 Mass. 443, 448 (1984). After a two-day evidentiary hearing, the motion judge denied the motion to suppress, finding that, while the defendant had consumed some alcohol that day, he did not become intoxicated. The judge also found that the defendant was sober, understood his rights, and had voluntarily and intelligently waived those rights. We conclude that the judge was warranted in his findings, and that there was no error in denying the motion to suppress.

Illiteracy and low intelligence are factors in examining the totality of the circumstances leading to a waiver. *Commonwealth* v. *Cameron,* 385 Mass. 660, 665 (1982). *Commonwealth* v. *Davis,* 380 Mass. 1, 4-6 (1980). The judge found that the police officers had read the Miranda rights aloud to the defendant and that he had understood them, in part, from prior experience. See *Commonwealth* v. *Cameron, supra* at 665; *Commonwealth* v. *Tavares,* 385 Mass. 140, 143, cert. denied, 457 U.S. 1137 (1982); *Commonwealth* v. *Davis, supra* at 6. Furthermore, the defendant had recited his Miranda rights from memory both while the police began to read them, and again before the judge. The judge noted that the defendant "testified as to *Miranda* rights quicker and clearer and more accurately than some police officers have testified in other cases."

Intoxication also bears on the validity of a waiver and the voluntariness of a statement. *Commonwealth* v. *Lanoue,* 392

Mass. 583, 587 (1984). In this case, the judge found that, although the defendant had consumed some alcohol, he did not become intoxicated. The judge's findings were based on a weighing of the evidence presented. We will not ordinarily disturb such determination based on the evidence, nor will we disturb the judge's subsidiary findings if warranted by the evidence. *Commonwealth* v. *Hooks,* 375 Mass. 284, 289 (1978), citing *Commonwealth* v. *Sires,* 370 Mass. 541, 544 n.1 (1976). We conclude that the judge was warranted on the evidence in finding that the defendant knowingly and intelligently waived his rights, and voluntarily made his statement.

The defendant also contends that the police officers were required to advise him of his Miranda rights again following the twenty to forty-five minute break in the questioning. We disagree. Nothing in the record indicates that the defendant either exercised his right to remain silent or asked for an attorney. See *Edwards* v. *Arizona,* 451 U.S. 477, 484-485 (1981); *Commonwealth* v. *Pennellatore,* 392 Mass. 382, 387 (1984); *Commonwealth* v. *Brant,* 380 Mass. 876, 882, cert. denied, 449 U.S. 1004 (1980). The break in questioning was not lengthy, and appears to have been the result of humanitarian considerations to permit the defendant to regain his composure. See *Commonwealth* v. *Harvey,* 390 Mass. 203, 206 (1983) (statement suppressed where defendant advised of rights, asserted right to remain silent, and approximately eight hours later police elicited statement by design without readvising him of his rights). See also 1 W. LaFave & J. Israel, Criminal Procedure § 6.8(b), at 519-521 (1984). In the circumstances here, the police were not required to readvise the defendant after the break in questioning.

The defendant also appeals the denial of his motion for a required finding of not guilty. The defendant's statement, which we have concluded was properly admitted, together with evidence apart from the statement, constituted overwhelming evidence supporting the defendant's conviction of murder in the first degree. *Commonwealth* v. *Cameron,* 385 Mass. 660, 666-667 (1982). There was no error.

Finally, the defendant asks that this court exercise its power under G. L. c. 278, § 33E, to order a new trial or reduce the verdict. We have reviewed the entire record on the law and on the evidence, and conclude that there is no occasion for exercising our power under G. L. c. 278, § 33E.

*Judgment affirmed.*