Lu, John T., J.
INTRODUCTION
The defendant, Paul Stazinski (Stazinski), moves to suppress his statements to police, claiming that he lacked the mental capacity to knowingly and voluntarily waive his Miranda rights. The Commonwealth argues that Stazinski understood the warnings themselves and, since he need not understand the consequences of the decision to waive Miranda rights, they have met their burden to show that Stazinski waived his rights knowingly and voluntarily. The court conducted an evidentiary hearing on August 8 and 9, 2007.
Finding that, although it is a close factual issue, Stazinski had such a low level of mental functioning that he did not understand some of the warnings themselves and therefore did not knowingly and voluntarily waive his Miranda rights, the court allows the motion to suppress.
FINDINGS OF FACT
Based on the evidence presented and reasonable inferences from the evidence, the court makes the following findings of fact.
1. On December 18, 2003, Beverly Police Detective Harold Geary (Geary) obtained an arrest warrant for the defendant Paul Stazinski (Stazinski) for Rape of a Child.
2. Geary and another officer, both dressed in plain clothes, went to Stazinski’s home in Peabody and knocked at the door. Stazinski’s mother answered and told Geary that Stazinski was not at home.
3. Stazinski’s mother invited police to wait for him, which they did. While waiting, Stazinski’s mother told them that he was dyslexic.
4. Stazinski arrived home and police handcuffed him.
5. While in the police car on the way to the station, Geary read Miranda warnings to Stazinski as contained in Exhibit #2:
Before we may ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can and will be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning. If you cannot afford a lawyer, one will be appointed for you before questioning if you wish. If you decide to answer questions now without a lawyer present, you will still have the right to stop questioning at any time until you talk to a lawyer. Do you understand what I have read to you? Having these rights in mind do you wish to talk to me now?
6. Stazinski answered “yes” to each question and police told him that they would not ask him any questions until they returned to the station.
*158 7. At the booking desk, Stazinski provided his driver’s license, occupation, phone number, and the names of his mother and father.
8. Geary and another officer released Stazinski from handcuffs and administered Miranda warnings to him identical to those listed in finding of fact #5, above. Once again, Stazinski answered “yes” to each question.
9. Stazinski signed the Miranda card.
10. Stazinski appeared nervous and very quiet.
11. Under questioning, Stazinski admitted that he touched the penis of the alleged victim, Artie, but claimed it was only for a short time and that it was a joke.
12. This was intended by Stazinski to minimize and excuse the offense.
13. Although Stazinski’s answers were not detailed, they contained some information that was not contained in the questions.
14. Stazinski said that he knew what he did was wrong and that he was sorry. He said that he was arrested for operating under the influence of alcohol in 1994.
15. Stazinski was employed as a custodian at various Burger Kings for 15 to 20 years. He failed to advance beyond custodian because he lacked the mental capacity to perform more complex jobs such as taking and filling customer orders.
16. Ronald Schouten, M.D. (Schouten), Associate Professor of Medicine at the Harvard Medical School and Director of the Law and Psychiatry Service at the Massachusetts General Hospital interviewed Stazinski twice and reviewed Stazinski’s medical records. [1]
17. Based on the evidence and Schouten’s testimony, the court finds that:
a. Stazinski exhibited physical characteristics of one with mental retardation including humming and singing to himself, and constantly touching himself.
b. Stazinski “aims to please” meaning that his reflexive response to a question or conflict is to answer “yes” or agree.
c. Although Stazinski stated that he understood the Lamb warnings, he did not understand them until Schouten engaged in an extended explanation of the Lamb warnings.
d. Stazinski could not correctly perform repeated subtractions of three.
e. Stazinski was confused about which hospital he was at.
f. Stazinski could not accurately calculate the change one would receive in a simple financial transaction.
g. Stazinski could not understand the meaning of proverbs.
h. Stazinski had difficulty reading without assistance.
i. Stress and anxiety reduced the quality of Stazinski’s mental performance.
j. Schouten had to speak to him slowly and repeat himself in order to be understood.
k. Stazinski’s employment history included low-level Burger King jobs, and working in a theater and as a handyman and floor washer.
l. Stazinski’s mother consistently assisted her son in his communication with care givers and others.
m. In 1998, Stazinski went to the Beverly Hospital, unaccompanied, for a colonoscopy. Medical staff were concerned about his mental functioning and engaged in an unusual extended colloquy with him on informed consent, which they carefully documented. They did so because he was obviously impaired.
n. The Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM-IV-TR) (2000) provides guidelines for the diagnosis of mentally retarded persons.
o. The DSM-IV-TR provides that mild mental retardation is present in persons with IQ levels from “50-55 to approximately 70.”
p. The DSM-IV-TR provides the consensus of mental health professionals and is intended to be used in conjunction with other information including clinical judgment.
q. In 1971, Stazinski had a normal IQ.
r. In 1983, Stazinski had a Full Scale IQ of 83, Performance IQ of 92 and Verbal IQ 79.
s. In 2004 (and post-arrest), Stazinski had a Verbal IQ of 62, Performance IQ of 77, and Full Scale IQ of 66.
t. At the time of his statement to Geary, the most relevant IQ was Stazinski’s Verbal IQ.
u. At the time of his statement to Geary, Stazinski’s Verbal IQ was approximately 72.[2]
v. Stazinski may have attempted to minimize his criminal offense against Artie, but it was an unsophisticated attempt, much as that of a young child.
w. Stazinski did not understand some of the warnings.
18.Based on the evidence and the testimony of Andrea L. Seek, M.D. (Seek) the court finds that:
a. Stazinski has injured his eyebrows, head and ears because he compulsively hits himself.
b. Stazinski has abnormal bone growth under his eyebrows from repetitively hitting himself very hard in the head for 15 to 20 years.
*159 c. Stazinski has the intellectual functioning of a seven-or eight-year-old child.
d. Seek relies upon Stazinski’s mother to assist her communication with Stazinski. She does not communicate with him unassisted by his mother.
19. Seek is one of Stazinski’s treating physicians and engages in little or no forensic psychiatry.
20. In order to obtain his driver’s license Stazinski passed an oral examination at the Registry of Motor Vehicles.
21. Stazinski understood the following rights:
You have the right to remain silent. Anything you say can and will be used against you in court.
22. He did not understand the other warnings. He understood the questions about whether he understood his rights and wished to speak to police but reflexively answered, “Yes.”
LEGAL DISCUSSION
Stazinski moves to suppress his statements on the basis that he did not waive his Miranda rights knowingly and voluntarily.
It is the Commonwealth’s burden to prove beyond a reasonable doubt that, given the totality of the circumstances, Stazinski knowingly, voluntarily, and intelligently waived his Miranda rights. Commonwealth v. Auclair, 444 Mass. 348, 353 (2005). The Commonwealth must also prove beyond a reasonable doubt that, based on the totality of the circumstances, the statements given to the police were made voluntarily. Id. A statement is voluntary if it is “the product of a rational intellect and a free will.” Commonwealth v. Davis, 403 Mass. 575, 581 (1988).
Although the voluntariness of a Miranda waiver and the voluntariness of a statement are “separate and distinct inquiries,” the totality of the circumstances test under each analysis is the same. Commonwealth v. Jackson, 432 Mass. 82, 85-86 (2000). “Relevant factors to consider include, but are not limited to, promises or other inducements, conduct of the defendant, the defendant’s age, education, intelligence, and emotional stability, experience with and in the criminal justice system, physical and mental condition, the initiator of the discussion of a deal or leniency (whether the defendant or police), and the details of the interrogation, including the recitation of Miranda warnings.” Id. at 86. Where, as here, the defendant has a low intelligence, the court must give “special attention” to whether he has voluntarily and knowingly waived his rights. Commonwealth v. Hartford, 425 Mass. 378, 381 (1997).
Stazinski had an IQ of 72. His low intelligence does not automatically require a finding that his waiver was invalid. See id. at 380-81 (individual with IQ of 73 made knowing and voluntary waiver); Commonwealth v. Cameron, 385 Mass. 660, 664-65 (1982) (same). However, the court gives his low intelligence level “considerable weight.” Commonwealth v. Hilton, 443 Mass. 597, 605 (2005). In addition to his low intelligence, Stazinski is dyslexic and exhibits the characteristics of one who suffers from mental retardation, including repetitive humming, singing, touching, and repetitive and forcefully hitting himselfl See Jackson, 432 Mass, at 86 (learning disability is a relevant factor); Commonwealth v. Libran, 405 Mass. 634, 638-39 (1989) (mental retardation is relevant factor); cf. Hartford, 425 Mass. at 380 (defendant had low cognitive abilily but did not suffer from mental retardation or learning disability).
The Commonwealth points out that Stazinski was twice read his Miranda rights and that he responded affirmatively each time he was asked if he understood those rights. See Cameron, 385 Mass. at 665 (denial of suppression motion when defendant read rights three times). Stazinski, however, was alone and very nervous. Cf. Jackson, 432 Mass. at 86 (defendant’s calm and composed demeanor suggested finding of voluntariness). His affirmative responses amounted to no more than two “yes” responses — responses which his condition caused him to reflexively utter. He has difficulty understanding basic concepts. He had difficulty comprehending the Lamb warnings. He could not correctly perform repeated subtractions of three or calculate accurately the amount of change one would receive in a hypothetical financial transaction. See Hilton, 443 Mass. at 607 (difficulty in understanding basic concepts suggests involuntary waiver).
Stazinski also has trouble communicating to others without assistance. His mother aids his communication with care givers, Dr. Schouten had to speak to him slowly and repeat himself so that Stazinski could comprehend the subject matter, and medical staff at Beverly Hospital were so concerned about his mental capacity that they engaged in an extended and well-documented colloquy regarding his informed consent to undergo a colonoscopy. Cf. Jackson, 432 Mass. at 86 (defendant had no difficulty communicating). Stazinski has the equivalent intellectual functional capacity of a seven-or eight-year-old child. Given the evidence, Stazinski’s affirmative responses were more likely a product of his mental condition rather than an expression of understanding as to the nature of his rights.
These facts alone suggest that Stazinski’s waiver was not made knowingly, voluntarily, and intelligently. See Hilton, 443 Mass. at 607 (defendant who had mental impairments and who had difficulty understanding basic concepts and Lamb warnings did not voluntarily and knowingly waive Miranda). There is more. Stazinski did not fabricate a story in an attempt to escape liability but only minimized some of his acts, as Schouten said, as a child might. See Libran, 405 Mass. at 639 (defendant’s initial fabrication of exculpatory story revealed an awareness that speaking to the police could be harmful to his inter *160 ests). Instead, he readily admitted that he had touched the victim’s penis. His responses were short and lacking much detail. He did not initiate any conversations or ask any clarifying questions. Although he has a driver’s license, Stazinski, a grown man, lives with his mother. Cf. Hartford, 425 Mass. at 381 (living on own supports finding of sufficient cognitive ability to waive rights). His previous experience with the criminal justice system is limited to one prior arrest ten years before the present offense and occurred during a time when he had a higher intelligence. Cf. Jackson, 432 Mass. at 87 (“considerable prior experience” with the police supports finding of knowing and voluntary waiver). Although he had held down several part-time jobs, he was unable to advance beyond any menial positions over a twenty-year period. See Hartford, 425 Mass. at 381 (employment history is relevant factor).
The issue is close. Stazinski possessed some intellectual shortcomings which prevented him from engaging in behavior most adults can participate in. More important, his mental abilities prevented him from fully comprehending what others were relating to him. The Commonwealth contends accurately that Stazinski need not have understood the legal ramifications of his decision to waive his Miranda rights. “In order for a waiver to be ‘knowing’ and ‘intelligent,’ the defendant must understand ‘the [Mirandai warnings themselves,’ but does not need to understand or appreciate the tactical or strategic consequences of waiving Miranda rights.” Hilton, 443 Mass. at 628, quoting Commonwealth v. Raymond, 424 Mass. 382, 393 (1997). Given the totality of the circumstances, including the recitation of Miranda warnings without extra explanation, the court finds that the Commonwealth has failed to show beyond a reasonable doubt that Stazinski understood the more complicated of the Miranda warnings. Stazinski understood the first two rights. He did not understand the other rights. The Commonwealth has failed to show that Stazinski knowingly, voluntarily, and intelligently waived his Miranda rights.
ORDER
Defendant Paul Stazinski’s motion to suppress statements made to members of the Beverly Police Department is ALLOWED.

The court credits and incorporates by reference Exhibit #3, Schouten’s curriculum vitae.

This is the court’s estimate, albeit an imprecise one, of Stazinski’s IQ at the time of questioning.