COMMONWEALTH *vs.* JAMES E. BASS. September 3, 1987. *Constitutional Law,* Search and seizure. *Search and Seizure,* Affidavit, Exigent circumstances, Plain view, Warrant. *Practice, Criminal,* Appeal by Commonwealth.

After a hearing on a defense motion to suppress evidence, a Superior Court judge ruled that: (a) exigent circumstances existed which justified a warrantless search and the police could testify to having seen a particular baseball cap (the cap itself had vanished); (b) the search of the shelf of a dry bar was beyond the scope of a safety search under exigent circumstances and the police could *not* testify to having seen a long-barreled dull grey pistol (the pistol had also vanished); and (c) the affidavit offered in support of an application for a warrant for a further search of the same premises was fatally defective, with the result that a pair of maroon sweat pants found in the second search could not be received in evidence. The Commonwealth, by leave of a single justice of the Supreme Judicial Court, Mass.R.Crim.P. 15(b)(2), 378 Mass. 884 (1979), appeals from the suppression orders.

*Facts.* We summarize the facts found by the judge. On October 14, 1985, around 6:00 P.M., a man held up a Hess gas station in Springfield. From on-the-spot witnesses the police learned that the hold-up man used a dark-grey, long-barreled handgun and wore a baseball cap bearing the word "Capital" or "Capitol," maroon sweat pants, a blue windbreaker, and high-top sneakers. At approximately 6:30 P.M., the police received an anonymous telephone tip that the man who had committed the Hess gas station robbery could be found at 271 Oak Grove Avenue. A posse of eight plain-clothes detectives and four uniformed officers, in a total of six cars, descended upon that address.

As the police arrived, they saw a possible suspect about to leave by car from in front of the house at 271 Oak Grove Avenue. A curbside interview of the possible suspect produced information that a man answering the police description (height, age range, clothes) lived in the first floor left apartment at 271 Oak Grove and was "a real bad dude." With guns drawn — they had reason to fear an armed suspect who had committed a violent offense — six police officers made for the first floor apartment on the left. The door was open, something was cooking on a kitchen stove, and the television was on.

On a couch the police saw a baseball cap of the sort the Hess clerks had described. There was a "dry bar" some five feet long, eighteen inches deep, and four feet high in the living room, two feet out from the left hand wall as one entered. A detective searching with a flashlight (the livingroom was dark) checked behind the bar to see if anyone was hiding there. Nobody was. On a shelf inside the dry bar (i.e., below the top, but open to the rear) the searching officer saw a dark grey long-barreled pistol of the sort used in the Hess holdup.

At that juncture, the police conferred and made an ill-considered decision. They did not seize the cap and pistol as evidence; rather, they determined that it would be better — insurance as it were — to arm themselves with a search warrant. That misunderstanding of the law of search and seizure they compounded by failing to post an officer in the apartment or at its entrances while some members of the squad obtained a search warrant. Remarkably, the police posted a surveillance team behind a fence some 100 feet from the house at 271 Oak Grove. Three hours later, with a search warrant in hand, police returned to the apartment. The weapon and the baseball cap were no longer there. All that a search turned up were the maroon sweat pants.

1. *The baseball cap.* It is not disputed that the information obtained from the informer and from the police interrogations outside 271 Oak Grove provided probable cause to enter the apartment the defendant might have been in. The likelihood that he was armed and on the run constituted exigent circumstances which gave constitutional justification for search of a residence without a warrant. See *Vale* v. *Louisiana,* 399 U.S. 30, 34-35 (1970); *Commonwealth* v. *Forde,* 367 Mass. 798, 804-805 (1975); *Commonwealth* v. *Huffman,* 385 Mass. 122, 124-126 (1982); *Commonwealth* v. *DiSanto,* 8 Mass. App. Ct. 694, 700 (1979); *Commonwealth* v. *Skea,* 18 Mass. App. Ct. 685, 695-696 (1984); *Commonwealth* v. *Hamilton, ante* 290, 292-295 (1987). Cf. *Commonwealth* v. *Sergienko,* 399 Mass. 291, 293 (1987). Once lawfully inside the premises, the police may seize evidence in plain view. *Coolidge* v. *New Hampshire,* 403 U.S. 443, 465-466 (1971). *Commonwealth* v. *Haefeli,* 361 Mass. 271, 281-282 (1972), vacated sub nom. *Haefeli* v. *Chernoff,* 394 F. Supp. 1079 (D. Mass.), rev'd, 526 F.2d 1314 (1st Cir. 1975). The judge declined to suppress testimony about the cap by the detectives who saw it during the initial search.

In this authorized interlocutory appeal by the Commonwealth, the defendant argues that evidence about the cap should be suppressed because the Commonwealth failed to preserve the physical evidence, i.e., the cap. We need not consider the point as the defendant did not seek leave to appeal under Mass.R.Crim.P. 15(b)(2), 378 Mass. 884 (1979). We do not intimate that there is any merit to the defendant's position, especially in circumstances where the particular physical evidence was not seized by the Commonwealth.

2. *The firearm*. Within the apartment the police were entitled to look for their quarry, who was known to have been armed, and to determine that they had control of weapons which could be used against them. *Commonwealth* v. *Young*, 382 Mass. 448, 457-458 (1981). *Commonwealth* v. *DiSanto*, 8 Mass. App. Ct. at 702. See Smith, Criminal Practice & Procedure § 245 (2d ed. 1983). The judge found that the flashlight sweep by Detective Kennedy between the dry bar and the wall established that nobody was hiding there. The weapon on the dry bar shelf was not in plain view until the detective went behind the dry bar and probed the shelf with his flashlight beam. Poking around (it is to be remembered that the room was dark) on the dry bar shelf, the judge could find, as he did, was not incident to the permissible aspects of the search, i.e., to see if the robbery suspect was in the apartment. See *Arizona* v. *Hicks*, 480 U.S. 321, 325 (1987), in which the Court said that "taking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of respondent's privacy unjustified by the exigent circumstance that validated the entry." Contrast *Commonwealth* v. *Gabbidon*, 17 Mass. App. Ct. 525, 533 (1984). While the judge's finding that the firearm was not in plain view was not compelled, we find support for it in the record, and hence, accept it, absent clear error. *Commonwealth* v. *Moynihan*, 376 Mass. 468, 473 (1978). *Commonwealth* v. *Moon*, 380 Mass. 751, 756 (1980). There was no error in allowing the motion to suppress testimony about observations of the firearm.

3. *The affidavit*. To apply for a search warrant, Detective McFarlin used a printed form bearing the caption: "Affidavit In Support of Application for Search Warrant." The second paragraph provided space, though not much, for a statement of the facts and sources of information which, in the opinion of the affiant, added up to probable cause that a person or things would be found in the place to be searched. Had McFarlin begun his statement of facts and, when he was close to running out of space on the form, written something like, "continued on addendum attached hereto and made a part of this affadavit," we suppose there would have been no difficulty. Instead, all that appeared in the space provided were the words, in parentheses: "See Attached Affidavit and Documents." What was attached was not, viewed independently and on its face, an affidavit. There was typewritten material, a bit more than a page, signed by Detective McFarlin. What McFarlin's material recited supported the issuance of a search warrant,

but the material itself, i.e., the page, plus, of typewriting, was not sworn to and it contained no jurat. The judge, viewing the appended sheets containing McFarlin's statement as purporting themselves to be an affidavit, concluded they did not amount to such for lack of a jurat. Without support of an affidavit, the warrant and the search which proceeded on the strength of it were bad. The judge allowed the motion to suppress the maroon sweat pants.

Some three weeks before the hearing on the motion to suppress was held on April 14 and 15, 1986, the Supreme Judicial Court decided *Commonwealth* v. *Truax,* 397 Mass. 174 (1986), which, we think, governs the case adversely to the defendant. So soon after release, *Truax,* it appears from the record, did not come to the attention of counsel or the judge. In *Truax,* information on two pages attached to the warrant application were not signed, let alone sworn to before proper authority. "No statute or other authority requires the affiant to sign pages attached to the warrant application. . . . The affiant's failure to sign the pages attached to the warrant application did not affect the validity of the warrant." *Id.* at 179 (citations omitted). See also *Commonwealth* v. *DeCologero,* 19 Mass. App. Ct. 956, 959 (1985). To be sure, in *Truax,* the affiant wrote in the blank on the application form "see attached page" and the court in *Truax* noted that with approval. *Commonwealth* v. *Truax, supra* at 179 n.1. That, as we have already observed, has a more logical and less circular quality than the "See Attached Affidavit and Documents" which appeared on the application in this case. We do not think the validity of an affidavit need turn on such a nuance of form. A literary style manual is not routine police equipment.[1] We are persuaded that McFarlin's statement was incorporated in the second numbered paragraph of the printed affidavit form and, hence, properly sworn to within the meaning of G. L. c. 276, §§ 1 & 2B. Contrast *Commonwealth* v. *Dozier,* 5 Mass. App. Ct. 865, 865-866 (1977). The fruit of the search made pursuant to the search warrant — the maroon sweat pants — should not have been suppressed.

The denial of the motion to suppress evidence about the baseball cap is affirmed; the allowance of the motion to suppress evidence about the firearm is affirmed; the allowance of the motion to suppress admission in evidence of the maroon sweat pants is reversed.

*So ordered.*

*Brett J. Vottero,* Assistant District Attorney, for the Commonwealth.
*Linda J. Thompson* for the defendant.

---

[1] Difficulties with the use of procrustean forms are unlikely to recur as the Trial Court has recently published and widely disseminated forms of an affidavit in support of an application for a search warrant, the application itself, and a search warrant. Those forms provide ample spaces and include careful instructions about how the forms should be used.