583 So.2d 620 (1991)
Herbert WILLIAMS and Elizabeth Norwood
v.
STATE of Mississippi.
No. 07-KA-59483.
Supreme Court of Mississippi.
June 26, 1991.
Rehearing Denied August 14, 1991.
*621 John Arthur Eaves, Jackson, for appellants.
Mike C. Moore, Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and ROBERTSON and SULLIVAN, JJ.
ROBERTSON, Justice, for the Court:

I.
Today's appellants are pot pushers who have been convicted of possession of a more than modest quantity of marijuana with intent to distribute. They challenge principally the prosecution's use of the marijuana as evidence at trial and argue en route that the authorities came by the marijuana through an illegal search and seizure. We have considered the arguments with care and reject them all.
We affirm.

II.

A.
Herbert Williams, age 51, and Elizabeth Norwood, age 40, were the Defendants below and are the Appellants here, and it is clear from the record they engaged in romantic and other liaisons. Norwood lived in the Carpenter Community in rural Copiah County. Williams lived with his sister in Claiborne County, but, more than occasionally, frequented Norwood's abode.
The story begins in an altogether different part of the state. Over an eight-day period beginning January 26, 1988, Mississippi State University student Ron Howard unwittingly and illegally made three sales of marijuana to undercover agents of the Mississippi Bureau of Narcotics (MBN). On February 9, 1988, MBN officers arrested Howard and charged him with an assortment of offenses. In the course of confessing his crimes, Howard implicated his principal supplier, Joel Tullos, a student at Mississippi College in Clinton. MBN authorities decided to pursue Tullos and had Howard immediately negotiate a buy from Tullos over the telephone. Matters proceeded apace, and MBN followed Howard to Hinds County, observed Howard make his buy from Tullos, and then placed Tullos under arrest.
It seems that Howard had also had direct dealings with Herbert Williams and, in fact, on January 25, 1988, Howard had received marijuana from the dwelling soon to be at issue. For the most part, Tullos had brokered Williams' sales to Howard. In any event, once Tullos was in tow, MBN decided to go after Williams and to do so with dispatch. Securing the assistance of Copiah County Sheriff Tommy Jackson and MBN Sergeant Tommy Cavanaugh, who worked the Copiah County area, the officers proceeded to the home of Justice *622 Court Judge Billie (Mrs. John M.) Smith. Judge Smith issued a search warrant for the residence in Carpenter they thought was Williams'. By this time it was the early evening of February 10. In an abundance of precaution, Sheriff Jackson and the MBN officers assembled a team of some eighteen officers of the law, and they hurried to the Carpenter Community and arrived at what was in fact Norwood's house at approximately 11:00 p.m. The entourage gained entrance with little difficulty and found Williams and Norwood in bed asleep. Of more importance, the officers found as well some 12.4 pounds of marijuana and $11,595.00 in cash.

B.
On April 5, 1988, the grand jury of Copiah County returned an indictment charging Williams and Norwood with the unlawful possession of more than one kilogram of marijuana with intent to distribute. Miss. Code Ann. § 41-29-113(c)(12) and -139(a)(1) (Supp. 1988). Prior to trial, Williams and Norwood moved to suppress all evidence seized on the night of February 10, charging an illegal search and seizure. The Circuit Court conducted an extensive pre-trial hearing and, in the end, denied the motion. The case proceeded to trial, whereupon the jury found Williams and Norwood guilty as charged. The Circuit Court sentenced each to twenty years imprisonment in the custody of the Mississippi Department of Corrections and ordered that each pay a fine of $30,000.00 plus all costs of court. Miss. Code Ann. § 41-29-139(b)(1) (Supp. 1990).
Williams and Norwood now appeal to this Court.

III.

A.
Williams and Norwood argue that the Circuit Court erred when it denied their motion to suppress and when it allowed the prosecution to offer into evidence the items seized in the late night search on February 10, 1988, principally the marijuana and the money. As grounds, Williams and Norwood mount a broad-side attack on the legality of the search, beginning with the charge that there was not sufficient probable cause for Judge Smith to issue the search warrant.
Probable cause is a practical inquiry, a function of the totality of the circumstances in each particular case. Bevill v. State, 556 So.2d 699, 712 (Miss. 1990); Daniel v. State, 536 So.2d 1319, 1322 (Miss. 1988); Lee v. State, 435 So.2d 674, 676 (Miss. 1983); see also, Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Objectivity is the key, for the information supporting probable cause must be such that would lead a reasonably competent issuing magistrate to believe that evidence will be found. Rooks v. State, 529 So.2d 546, 555 (Miss. 1988). Stale news may not suffice, Rooks, 529 So.2d at 555, see also, W. LaFave, Search and Seizure § 3.7(a) (1987), a point to which we return below. In reviewing a magistrate's finding of probable cause, we look for a substantial objective basis for that finding. Carney v. State, 525 So.2d 776, 782 (Miss. 1988); Lockett v. State, 517 So.2d 1317, 1324 (Miss. 1987); Harper v. State, 485 So.2d 1064, 1066 (Miss. 1986). In making our review, we look both to the facts and circumstances set forth in the affidavit for search warrant and as well, the sworn oral testimony presented to the issuing magistrate. See, e.g., Hickson v. State, 512 So.2d 1, 3 (Miss. 1987); Hester v. State, 463 So.2d 1087, 1089-90 (Miss. 1985).
MBN Lieutenant Charlie McVey and MBN Agent Lee Miley, both of MBN's Starkville District Office, made the affidavit for search warrant, a copy of which we attach to this opinion as an Appendix. Also presenting testimony in support of issuance of the search warrant was local MBN Sergeant Tommy Cavanaugh. The affidavit contains a lengthy statement of underlying facts and circumstances beginning with the statement that Ron Howard personally observed marijuana at the residence in issue in Copiah County on January 25, 1988. Williams and Norwood argue this is too remote, that this information is stale and does not suggest the presence of marijuana on February 10. Any such *623 stanleness evaporates in the face of the further fact that the marijuana Agents McVey and Miley saw Tullos sell to Howard on February 10 came from Williams and from the house in issue that very day. We hold there was a reasonable, objective basis for Justice Court Judge Smith finding that probable cause existed for supporting the issuance of the search warrant.

B.
Williams and Norwood next challenge the search on grounds the information given to Judge Smith did not establish the reliability of the original informant, Ron Howard. As best we can decipher it, the point harkens back to the old Aguilar[1]-Spinelli,[2] test for judging probable cause. This test was abandoned in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and replaced by the now familiar totality-of-the-circumstances test. We have followed Gates consistently at least since 1983. Lee v. State, 435 So.2d at 676. Assuming arguendo Howard's credibility was not sufficiently shown under the old test, we repeat what we have said above, to-wit: given the totality of the circumstances presented to Judge Smith, there existed a reasonable, objective basis for a finding of probable cause for the issuance of a search warrant.

C.
Williams and Norwood next challenge the search on grounds that Attachment "A" to the affidavit for search warrant  that part of the affidavit containing a description of the house to be searched  was not signed by the affiants. For explication, the affidavit consists of five pages. The first two appear to be a printed form with filled-in blanks, regularly used by MBN officers.[3] At the end of the second page, MBN Lt. Charlie McVey and Agent Lee Miley signed it and swore to its truthfulness. The third page is Attachment "A" and contains a description of the residence in the Carpenter Community to be searched. The fourth and fifth pages are the Underlying Facts and Circumstances, referred to in paragraph five of the printed form, and are signed by McVey and Miley at the bottom of each page.
Williams and Norwood argue in effect that each and every page of the affidavit had to be signed, reasoning that otherwise the officers could detach a page from the original and substitute a new one and, in this way, work considerable mischief.
We find no case in this jurisdiction on the point. Commonwealth v. Truax, 397 Mass. 174, 490 N.E.2d 425 (1986) is analogous. In Truax, police attached an unsigned form to their affidavit for a search warrant. Truax, 490 N.E.2d at 431. Noting that no statute or other authority required an affiant to sign pages attached to a warrant application, the court held failure to sign the additional pages did not render the warrant application defective. Truax, 490 N.E.2d at 431.
Commonwealth v. Bass, 24 Mass. App. Ct. 972, 512 N.E.2d 519 (Mass. App. Ct. 1987) found Truax controlling. In Bass, a detective preparing an affidavit in support of an application for a search warrant used a separate page to supply information. Bass, 512 N.E.2d at 521. On the original document, the detective referred to the attachments by stating "See Attached Affidavit and Documents." Bass, 512 N.E.2d at 521. The court held the validity of affidavits should not turn on "such a nuance of form". Bass, 512 N.E.2d at 522. Instead, the court deemed the attached page incorporated into the original document. Bass, 512 N.E.2d at 522.
In the case at bar, MBN agents did not sign the warrant's page containing the description of the property. However, Agent McVey, the author of the warrant and application, swore that the description was not substituted. Williams and Norwood offer only speculation to the contrary. We *624 think the Massachusetts case is well reasoned. It convinces us we should hold the affidavit is not fatally defective because Attachment "A" was not signed.

D.
Williams and Norwood argue that the search warrant was defective because it erroneously named Williams as the owner of the property when he did not own it. In point of fact, Norwood lived there, but her mother actually owned the property.
As with their other points, Williams and Norwood are off the mark. To begin with, nothing in the Fourth Amendment requires that either the affidavit or the warrant give the name of the owner of the property to be searched. The Amendment requires only that the affiant "particularly ... [describe] the place to be searched, and the persons or things to be seized." Our Constitution is to like effect, viz., "specially designating the place to be searched and the person or thing to be seized." Miss. Const.Art. III, § 23 (1890). Identifying the owner of the premises is relevant only to assist and aid in particularizing the place to be searched.
The law is well settled that the owner does not have to be named at all, so long as otherwise the warrant meets the constitutional requirements. In Banks v. City of Jackson, 152 Miss. 844, 120 So. 209 (1929), the search warrant listed the person as an "unknown occupant" but gave a specific street address of the premises. This Court upheld the search because the warrant directed the officers to a specific place. A similar result was reached in Traxler v. State, 220 Miss. 354, 67 So.2d 292 (1953), where this Court held that whenever the premises are sufficiently described, the owner or occupant, if unknown need not be named. W. LaFave, Search and Seizure § 4.5(a) (1987). Furthermore, error in naming the occupant of the premises also does not vitiate any otherwise valid warrant. State v. McColgan, 631 S.W.2d 151, 154 (Tenn. Ct. App. 1981). Instead, the question remains whether the description designates the places and things to be searched so that an officer making a search can locate them with reasonable certainty. McColgan, 631 S.W.2d at 154. Thus, the fact that Norwood was not named in the warrant does not require reversal.
The purpose of a description in a search warrant is:
First to inform the officer by the warrant where the premises are, or may be found, and, second, to enable the owner to determine whether the officer has legal authority to make a search, so that resistance will not be made, or should not be made, to the search.
Pool v. State, 483 So.2d 331, 334 (Miss. 1986). This Court has repeatedly held descriptions in search warrants are sufficient if the places and things to be searched are designated in such a manner that the officer making the search may locate them with reasonable certainty. Hamilton v. State, 556 So.2d 685, 689 (Miss. 1990); Pool, 483 So.2d at 334; Cole v. State, 237 So.2d 443 (Miss. 1970).
Examining the case at bar, the description begins at a point in Hinds County and proceeds to the house to be searched. Suffice it to say, this description seems adequate. However, Norwood and Williams allege the warrant is flawed because the warrant neither named the owner and, further, because Norwood was not served with a copy of the warrant.
The record reflects that Officer Tommy Squires made the return on the warrant on the following day, February 11, 1988, and certified that he served a copy on Herbert Williams, "the person occupying and controlling said place, together with a receipt for the items seized." MBN's failure to hand Norwood a copy of the search warrant does not require reversal. True, Miss. Code Ann. § 41-29-157 (1972) mandates
If property is seized pursuant to a warrant, a copy shall be given to the person from whom or from whose premises the property is taken ...
Miss. Code Ann. § 41-29-157(a)(3). While this section clearly dictates Norwood should have received a copy of the warrant, no case by this Court requires reversal for *625 failure to follow this provision. On the other hand, LaFave states that such provisions are ministerial and failure to follow such statutes does not void an otherwise valid search. LaFave, Search and Seizure § 4.12(a) (1987).

IV.
The Circuit Court made a clerical error in the order adjudging Williams and Norwood guilty, and Appellants seized on this fact and demand their release. The two judgments entered April 21, 1988, refer to the charge upon which each had been convicted as "conspiracy to commit the offense of possession of more than one kilogram of marijuana." In fact, neither Williams nor Norwood had been charged with conspiracy. The indictments rather charged possession of more than one kilogram of marijuana with intent to distribute. The case was tried on that theory. Significantly, the Court instructed the jury solely by reference to that charge, making no mention to any conspiracy theory. Moreover, the Circuit Court signed sentencing orders describing the offense as possession as opposed to conspiracy to possess. Indeed, at sentencing the Circuit Court stated to Williams and Norwood:
You have each been tried by a jury and found guilty of the offense of possession of more than one ounce of marijuana with the intent to distribute.
Neither Williams nor Norwood nor counsel took exception to the charge.
The error before us is wholly clerical. We perceive no way in which it caused confusion or prejudice to either defendant. It does not require reversal of Williams' and Norwood's convictions. Johnson v. State, 106 Miss. 94, 63 So. 338 (1913) is illustrative of the point. In Johnson, the State indicted and successfully tried a woman for murder. Johnson, 63 So. at 339. However, in the judgment imposing sentence the court clerk recited that the defendant was convicted for life "for such her crime of manslaughter.". Johnson, 63 So. at 339. This Court affirmed the defendant's conviction since the record reflected a trial for murder and nothing suggested a trial and conviction for manslaughter.
In the case at bar, the record shows a trial and conviction for possession with intent to distribute marijuana. All court papers with the exception of the April 21, 1988, entry are to like effect. The Circuit Clerk's clerical error does not require reversal. See also Jones v. State, 244 Miss. 256, 142 So.2d 36 (1962).

V.
Norwood finally argues that Flurry v. State, 536 So.2d 1340 (Miss. 1988) controls and requires reversal as to her. In Flurry, Edna Joye Flurry and Ricky Flurry were arrested and charged with manufacturing marijuana. Flurry, 536 So.2d at 1340. At a suppression hearing, a confidential informant testified he saw and heard Ricky Flurry tell someone to pull some leaves for their own use. Flurry, 536 So.2d at 1340. The confidential informant offered no testimony linking Edna Flurry with the plants. Flurry, 536 So.2d at 1340. This Court held that the prosecution failed to present a prima facie case against Edna Flurry as she was not connected with the drugs. Flurry, 536 So.2d at 1341.
The case at bar is distinguishable from Flurry. Both Howard and Tullos offered testimony linking Norwood to the drug activity at the house. One agent testified that on the night Norwood was arrested, she took a bag of marijuana from a closet claiming that to be the only one in the house. Norwood is linked to the marijuana at her residence that Flurry affords her no escape.
CONVICTION OF HERBERT WILLIAMS OF POSSESSION OF MORE THAN ONE KILOGRAM OF MARIJUANA WITH INTENT TO DISTRIBUTE AND SENTENCE OF TWENTY YEARS IN CUSTODY OF THE DEPARTMENT OF CORRECTIONS AND TO PAY A FINE OF $30,000.00 AND COURT COSTS, AFFIRMED; CONVICTION OF ELIZABETH NORWOOD OF POSSESSION OF MORE THAN ONE KILOGRAM OF MARIJUANA WITH INTENT TO DISTRIBUTE AND SENTENCE OF TWENTY *626 YEARS IN CUSTODY OF THE DEPARTMENT OF CORRECTIONS AND TO PAY A FINE OF $30,000.00 AND COURT COSTS AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., PRATHER, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).
[2] Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
[3] The form reflects "Copyright 1966 by W.S. Moore."