Agnes, A.J.
INTRODUCTION
The defendant Charles Lapen is charged by indictment with Assault by Means of a Dangerous Weapon, Failure to Secure a Weapon, Unlawfully Discharging a Weapon, and Indecent Exposure. He has filed a pretrial Motion to Suppress and a Motion to Dismiss. Based on the credible evidence presented at the hearing on the Motion to Suppress, I make the following findings of fact and rulings of law.
I. MOTION TO SUPPRESS
A. Findings of Fact
Mr. Kimball Moore lives in West Brookfield and is employed as a forester. He lives next door to the defendant, Charles Lapen. He and the defendant had an argument several years earlier over the odor caused by the defendant’s use of an open box outside of his home in place of an inside toilet or appropriate outhouse. Since then, the neighbors had no contact and no problems. At approximately 4:30 p.m. on July 11, 2002, Mr. Moore was cutting weeds on his property in the rear of his home when he heard the sound of a gun shot. Mr. Moore is familiar with firearms and has hunted throughout his life. He turned around to face his home and saw the defendant standing behind his (Moore’s) home holding a high-powered rifle with a scope. The defendant was naked. Mr. Moore shouted to him, “What are you doing!” and “What’s wrong?” There was no reply. Mr. Moore began to walk towards the defendant and said, “Charlie, you’re scaring me.” The defendant stood motionless holding the rifle across his chest. Mr. Moore did not see the rifle pointed at him. Mr. Moore was not struck by a bullet and there was no evidence of a spent round located in his vicinity.
*482 Receiving no reply from the defendant, Mr. Moore ran inside his home. He told his girlfriend to call the police. Concerned for her son who was outside on a tractor, Mr. Moore rushed outside and brought the boy inside the house. Mr. Moore did not see where the defendant went. There is a stand of trees between the two houses.
Officers Luce and Taylor of the Brookfield Police department were the first responders. Officer Kimberly Walker of the West Brookfield police arrived a few minutes later. After receiving a briefing from Mr. Moore about what had happened, the police went to the defendant’s home which was about 100 yards away. The defendant lives in a one-room house which is approximately ten feet by sixteen feet, without running water. It is not possible to see into the defendant’s home. Officer Walker was familiar with the defendant from prior dealings. The police proceeded with caution. The police saw the defendant standing outside his home, in the nude, smoking a cigarette. The defendant turned to face the officers as they approached. Officer Walker asked, “Charlie, What are you doing?” The defendant entered his home and closed the door.
The police were concerned for their safety. The police ordered the defendant to exit from his home. After several demands, the defendant, still naked, appeared in his doorway. Officer Taylor, another officer on the scene, sprinted toward the doorway and took the defendant down. He was placed in handcuffs. Officers entered the home to determine whether anyone else was present who might be in danger or who could pose a threat to the police. Once inside the defendant’s home, the police observed a built-in bed, a single hand-made, wood cabinet, a desk and a chair. The home was heated by a wood-burning stove and had no running water. Brookfield Police officer Clifford Luce, the first officer to enter the home, observed the cabinet with its doors closed. He also observed what appeared to him to be a sling of a rifle hanging on or over the closed cabinet door. [1] He could not see inside the cabinet from his vantage point and thus could not see the actual rifle. He opened the door and found that it contained two rifles and a handgun. He seized the rifle on a sling and placed it' on the defendant’s bed. Inside the cabinet he also saw two other guns (a second rifle and handgun).
Outside the home, the defendant was advised of his Miranda rights by Brookfield police officer Shane Taylor who read the warnings from a printed card[2] and given some clothes to put on. When asked if he understood his rights, he answered “I guess so.” The defendant was very uncooperative, belligerent and directed profane remarks at the officers. On October 11, 1998, the defendant had been advised of his Miranda rights by officer Parker of the West Brookfield Police Department both at the scene of his arrest on an unrelated charge involving an abuse of alcohol and again at the police station following an arrest on an unrelated charge. Prior to that, in August 1998, State Police trooper Michael Leo who then was a West Brook-field Police Officer advised the defendant of his Miranda rights in connection with another matter.
The defendant was informed of the charges. The police noticed an odor of an alcoholic beverage and asked the defendant if he had been drinking. He replied that he had consumed “two ounces” of vodka. He also told the police he was making a statement as a tree hugger and neighbor because of the use of tree cutting equipment by Mr. Moore. He said he only shot at the ground and not at Mr. Moore. His spoke coherently and in complete sentences.
B. Rulings of Law
1. Warrantless Entiy into the Defendant’s Home and Seizure of Certain Items
“Federal and State case law delineates clear boundaries for permissible entry by police officers into a home in order to search or arrest. In the absence of a warrant, two conditions must be met in order for a nonconsensual entry to be valid: there must be probable cause and there must be exigent circumstances.” Commonwealth v. DeJesus, 439 Mass. 616, 619 (2003), quoting Commonwealth v. Forde, 367 Mass. 798, 805 (1975). There is no question that the police had probable cause based on the report they received from Mr. Moore that the defendant had fired at least one shot from his high powered rifle as he (the defendant) faced him. See Commonwealth v. Cinelli, 389 Mass. 197, 213, cert, denied, 464 U.S. 860 (1983); Commonwealth v. Cefalo, 381 Mass. 319, 328 (1980). However, in DeJesus, the Supreme Judicial Court explained that when the police have probable cause to search a home or apartment, the mere possibility that evidence could be destroyed or that someone with a potential to harm them could be inside is not sufficient to authorize the police to make a warrantless entry in order to conduct a protective sweep incident to securing the premises while a warrant is sought. DeJesus, 439 Mass, at 620. Exigent circumstances must exist before any such entry is permitted.
Here, the police were aware of facts that created reasonable grounds to believe that there was a danger to their lives or the lives of others, and that evidence would be destroyed thus making it impractical to obtain a warrant. See Commonwealth v. Paniaqua, 413 Mass. 796, 798 (1992); Commonwealth v. Moore, 54 Mass.App.Ct. 334, 338 (2002). The police had a reliable report that the defendant had fired a rifle at a neighbor under circumstances that not only suggested the defendant was dangerous but that he might be mentally unstable. The police made a prompt investigation and saw the defendant enter his home and refuse to come out. When the defendant emerged without the rifle, naked and unresponsive, the police faced a dilemma. They had no way to determine whether there *483 mightbeotherpeopleinsidethedefendant’shomewho could be in a position to threaten them or who might be in danger. While destruction of evidence may not have been a critical concern, officer safety and the safety of others in the midst of these rapidly unfolding events was paramount.[3] Under the circumstances, the police had an obligation to enter the defendant’s home.
Once inside the home, the police made observations of the sling or should strap of what appeared to be a rifle hanging from or over the cabinet door. Although the police did not observe the rifle itself, the incriminating character of the item was apparent from what they observed and had been told about the events earlier that day. See Commonwealth v. Amour, 428 Mass. 725, 731-32 (1999). The police are permitted to rely on their training and experience in making this judgment about the incriminating character of the evidence they seize. See Commonwealth v. Hinds, 437 Mass. 54, 61 (2002). See also Commonwealth v. Moore, supra, 54 Mass.App.Ct. at 339. The discovery of what appeared to be the rifle created an exigency that demanded prompt action. In opening the closed though not locked cabinet door, the police did not exceed the scope of the authority that justified their entry.[4]
This case is distinguishable from Commonwealth v. Bass, 24 Mass.App.Ct. 972 (1987) (rescript), in which the Appeals Court considered an exigent circumstances based, warrantless entry into a home promptly after an armed robbery of a gas station. The police received a tip that the robber could be found at a particular residential address. As they arrived at the address, the police encountered a man leaving the home who informed them that a person matching a detailed description of the robber that had been given to the police by eyewitnesses lived in a particular first floor apartment and was “a real bad dude.” With guns drawn, the police approached the apartment, found the door open and the television on. They entered the apartment and saw a baseball cap that was in plain view on a couch and that matched the description of one worn by the robber. Something was cooking in the kitchen, but no one was inside the apartment. The police looked behind the a piece of furniture, “a dry bar,” with the aid of a flashlight to see if anyone was hiding there, and then moved it away from the wall and discovered on an open rear shelf, not visible from the position they had been in, a long-barreled pistol that matched the description of the gun used in the robbery. At this point, the police suspended operation, stationed officers away from the scene, obtained a search warrant and returned to find the baseball cap and gun gone. Id. at 973.
On appeal, the Appeals Court upheld the validity of the warrantless entry by the police, the observation of the baseball cap, and the flashlight sweep behind the dry bar. However, the Court noted that the pistol was not in plain view and that the conduct of the police in moving the furniture which led to the observation of the pistol, “was not incident to the permissible aspects of the search.” Id. at 974, citing Arizona v. Hicks, 480 Mass. 525, 533 (1984). In the present case, the police had a right to enter the defendant’s home to insure that no one else was inside who might harm them or require assistance. Once they saw what appeared to be a rifle, they were justified in seizing it and in the process of doing so in seizing the other weapons inside the cabinet. Contrast Commonwealth v. DiMarzo, 52 Mass.App.Ct. 746, 753 n. 9 (2001). Once the police are lawfully inside a home or apartment under an exception to the warrant requirement, they have a right to take protective measures for their own safety, i.e., a sweep of the premises to determine if persons may be hiding or in need of assistance, and in doing so to observe and seize items of evidence or contraband whose character as such is immediately apparent and that are in plain view.
2. Statements Made by the Defendant
The defendant maintains that his statements should be suppressed because they were not the product of a valid waiver of his Miranda rights. Under the circumstances, it is reasonable to take the defendant’s response (“I guess so”) as an affirmative answer to the question whether he understood his rights. See Commonwealth v. Corriveau, 396 Mass. 319, 330 (1985). Ordinarily, the police may rely on the defendant’s outward behavior to determine that he is capable of making a valid waiver. See Commonwealth v. Lanoue, 392 Mass. 583, 588-89 (1984). There was nothing ambiguous or equivocal about the defendant’s response. While there was evidence of the defendant’s intoxication, there is no evidence that he was severely impaired to the point where he lacked the capacity for to make a rational response. See Commonwealth v. Taylor, 398 Mass. 725, 728-29 (1986). The defendant did not request to speak to anyone. The police did not pressure him in any way or employ any trickery or physical force other than what was required to place him in custody. While the Commonwealth case is thin regarding the details surrounding the police encounter with the defendant and the personal characteristics of the defendant, considering the totality of the circumstances, I make the above findings establish by a standard of proof beyond a reasonable doubt that the defendant received his Miranda warnings.
There is no evidence of any physical or psychological coercion applied by the police. There is no indication that the defendant was so intoxicated that he was unaware of his surroundings or unable to make a rational decision about whether to speak. He had not suffered any injury, and made no request for medical assistance. There is no evidence of trickery, or physical or psychological coercion by the police. He said he had *484 consumed only two ounces of vodka. While he showed signs of intoxication, that alone does not necessarily render his statements involuntary. See Commonwealth v. Doucette, 391 Mass. 443, 448 (1984); Commonwealth v. Byrd, 52 Mass.App.Ct. 642, 645-49 (2001). Based on the totality of the circumstances, I find and rule that the Commonwealth has sustained its burden of proving that the defendant’s statements were voluntary by a standard of proof beyond a reasonable doubt.
II. MOTION TO DISMISS
The defendant has filed a motion to dismiss in which he alleges that the Commonwealth failed to offer sufficient evidence to the Grand Jury to warrant an indictment for a violation of G.L.c. 140, §131L. That statute provides in part that “it shall be unlawful to store or keep any firearm, rifle or shotgun ... in any place unless such weapon is secured in a locked container or equipped with a tamper-resistent mechanical lock or other safety device . ..” The Grand Jury minutes attached to the defendant’s motion make it clear that the cabinet in which the defendant had stored his weapons was not locked, had no lock on it and that none of the guns was equipped with a tamper-resistent lock. GJ Minutes, at 10 (June 9, 2003).
ORDER
For the above reasons, the defendant’s Motion to Suppress physical evidence is DENIED. The defendant’s Motion to Suppress statements is DENIED. And the defendant’s Motion to Dismiss is Denied.

This court filed a decision on the defendant’s motion to suppress on March 12, 2004. Thereafter, the Commonwealth filed a motion for reconsideration based on what it alleged were several factual inaccuracies. Following a hearing, the Commonwealth’s motion was allowed. The result is that certain critical facts relating to the observations made by the officers upon entering the defendant’s home have been revised which in turn require the court, for the reasons stated in the text infra, to deny the defendant’s motion to suppress.

The court finds that the warnings read by officer Leo were an accurate and complete statement of the warnings required by the Miranda case and Massachusetts law.

As Justice Greaney noted in Commonwealth v. DeJesus, “[W]hether an exigency existed, and whether the response of the police was reasonable and therefore lawful, are matters to be evaluated in relation to the scene as it could appear to the officers at the time, not as it may seem to a scholar after the event with the benefit of leisured retrospective analysis.” 439 Mass. 616, 620 n.3 (2003), quoting Commonwealth v. Young, 382 Mass. 448, 456 (1981).

Because the police did not know whether the rifle would be found in the defendant’s home when they entered it, they did not violate the mle which limits the application of the plain view doctrine to inadvertent seizures of evidhence. Compare Commonwealth v. D'Amour, 428 Mass. 725, 732 (1999).