## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-00641-COA

**HENRY LAWSON**                                                                                      **APPELLANT**

v.

**STATE OF MISSISSIPPI**                                                                              **APPELLEE**

DATE OF JUDGMENT:               09/29/2011
TRIAL JUDGE:                    HON. JAMES LAMAR ROBERTS JR.
COURT FROM WHICH APPEALED:      PRENTISS COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         WILLIAM C. STENNETT
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                BY: STEPHANIE BRELAND WOOD
DISTRICT ATTORNEY:              JOHN RICHARD YOUNG
NATURE OF THE CASE:             CRIMINAL - FELONY
TRIAL COURT DISPOSITION:        CONVICTED OF POSSESSION OF A
                                VEHICLE WITH AN ALTERED OR
                                MUTILATED VEHICLE IDENTIFICATION
                                NUMBER AND SENTENCED AS A
                                HABITUAL OFFENDER TO FIVE YEARS
                                IN THE CUSTODY OF THE MISSISSIPPI
                                DEPARTMENT OF CORRECTIONS
                                WITHOUT ELIGIBILITY FOR PAROLE OR
                                PROBATION, AND TO PAY A FINE OF
                                $5,000 WITH $4,000 SUSPENDED
DISPOSITION:                    AFFIRMED - 01/13/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., BARNES AND ISHEE, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.     A Prentiss County grand jury returned a four-count indictment against Henry Lawson

for various charges related to his operating a "chop shop" in Prentiss County, Mississippi.

The counts included operating a chop shop (Count I), two counts of possession of vehicles

with altered or mutilated vehicle identification numbers (VIN) (Counts II and IV), and possession of a stolen vehicle (Count III). A jury convicted Lawson on Count II, but was unable to reach a verdict regarding the other counts, resulting in a mistrial on those counts. The trial court sentenced him to five years in the custody of the Mississippi Department of Corrections as a habitual offender, and ordered him to pay a fine of $5,000, with $4,000 suspended. On appeal, Lawson raises three issues: (1) evidence stemming from an invalid search and seizure of Lawson's property in 2007 was improperly admitted; (2) the grant of the State's motion to amend the indictment to include a habitual status was improper; (3) the weight and sufficiency of the evidence did not support the verdict. Finding no error, we affirm.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2. The Prentiss County Sheriff's Office received information that led to the execution of a search warrant on May 31, 2007, for all of Lawson's "sheds, vehicles, and curtlidge thereto." Lawson's residence was at the end of a dead-end road in Jumpertown, Mississippi, near Booneville, Mississippi. During this search, the officers seized several parts from various vehicles (such as a truck frame, a truck bed, a truck cab, doors, and a hood), and VIN plates, all of which were documented by notes and photographs.[1]

¶3. In 2009, after receiving information from a confidential informant, the sheriff's department obtained a warrant to search the residence of Lawson's brother-in-law, Bennie Burcham, in Booneville. On June 22, 2009, the warrant was executed, and investigators

---

[1] For the purposes of this opinion, only the vehicle parts and vehicles related to Lawson's conviction and this appeal will be discussed in detail.

2

seized several items from Burcham's property, including a gold 2001 Chevrolet four-door extended-cab pickup, which had been reported stolen from Tupelo, Mississippi. The informant told Sheriff Randy Tolar that Lawson switched the VIN on this truck and sold it to Burcham. Burcham confirmed to officers executing the warrant that he had obtained the vehicle from Lawson. Sheriff Tolar explained that during his investigation, he determined the VIN attached to the gold 2001 Chevrolet pickup had previously been attached to a salvage vehicle – a 1999 General Motors pickup – which had been seen and photographed during the 2007 search of Lawson's property.

¶4.     The results of Burcham's search and investigation led the sheriff's department to obtain a second search warrant for Lawson's property, executed on June 23, 2009. During this search, several items were seized, including numerous vehicle parts and car tags. Further investigation led to a third search warrant of Lawson's property, executed on July 10, 2009. Numerous vehicle parts and items were again seized, including a 2008 white Chevrolet four-door rollback truck.[2]

¶5.     After a four-day trial, the jury found Lawson guilty of Count II, possession of a vehicle (the 2008 white Chevrolet rollback) with an altered or mutilated VIN, in violation of Mississippi Code Annotated section 63-25-5(3)(a) (Rev. 2013). Lawson now appeals his conviction and sentence.

## DISCUSSION

---

[2]     At trial, Sheriff Tolar explained that "rollback" trucks "are commonly used by wrecker services." Unlike a tow truck, where the vehicle to be towed needs to be hooked to cables, the bed of a rollback slides down to the ground, and the vehicle can be pulled onto the bed, and then the bed is raised.

## I. 2007 SEARCH WARRANT

¶6. In a pretrial motion hearing, the trial court heard argument and testimony relating to Lawson's motion to exclude evidence stemming from what he claims was an illegal search of his property on May 31, 2007. The trial court denied Lawson's motion. Lawson argues that the search was illegal because the search warrant that law enforcement officers presented to Lawson was unsigned, and thus invalid. Lawson reasons that all evidence derived from this initial search warrant is "fruit of the poisonous tree," and inadmissible.[3]

¶7. The standard of review for the admission or exclusion of evidence is abuse of discretion. *Stallworth v. State*, 797 So. 2d 905, 908 (¶8) (Miss. 2001). Article 3, Section 23 of the Mississippi Constitution and the Fourth Amendment of the United States Constitution provide that citizens have the right against unreasonable searches and seizures, no warrants shall be issued without probable cause, and the warrant must be supported by an oath. Additionally, "for a search warrant to be valid it must be issued by a neutral and detached magistrate." *Ormond v. State*, 599 So. 2d 951, 958 (Miss. 1992). "Most technical deficiencies which exist on the face of the warrant will not result in suppression unless it is clear that the defect defeats probable cause or authorizes a general search." William E. Ringel, *Searches & Seizures, Arrests & Confessions* § 7:8 (2d ed. 2014). "A search warrant that is not signed by the magistrate is void on its face, and any search and seizure thereunder

---

[3] In summary, there were three warrants executed to search Lawson's property: this first one in May 2007, a second warrant executed on June 23, 2009, and a third warrant executed July 10, 2009. All were entered into evidence. Additionally, there was one warrant executed to search Burcham's property on June 22, 2009. Numerous items were seized during each of these searches.

is unauthorized and illegal."  68 Am. Jur. 2d *Searches & Seizures* § 211 (2010) (citation omitted).  "However, a warrant supported by probable cause and otherwise valid is not void merely because of an inadvertent failure to sign it, as a mere clerical error does not void an otherwise valid warrant."  *Id.*; *see also State v. Huguenin*, 662 A.2d 708, 710 (R.I.  1995) (issuing judge's inadvertent failure to sign a search warrant did not render the warrant invalid where the evidence showed that the judge intended to sign the warrant).

¶8.    Lawson is illiterate, but claims that he was never presented with a signed search warrant giving the sheriff's department authority to search his home or the surrounding premises on May 31, 2007.  Lawson testified during his examination by defense counsel:

> Q.    [C]an you recognize a document in its form?
>
> A.    Yeah.
>
> Q.    Okay.  I'm going to show you a document.  Does this appear to be the document that you were presented with on the day your home was searched?
>
> A.    Yes, sir.
>
> Q.    Okay.  And I notice the document was not signed.  Was it signed on the day you were – it was presented to you?
>
> A.    No, sir.
>
> Q.    Is this an accurate copy of the document that was given to you on that day?
>
> A.    Yes, sir, looks like it.

The defense entered a copy of an unsigned search warrant into evidence.  During his examination by the State, Lawson was handed a signed search warrant dated May 31, 2007.  Lawson stated he could not "say for sure" if that was the same search warrant as the unsigned

5

one.  However, during Sheriff Tolar's testimony, the State entered into evidence a warrant signed by Judge Bill Sartain at 2:00 p.m. on May 31, 2007, as well as an affidavit and statement of underlying facts signed on the same date and time.  Sheriff Tolar maintained that this signed warrant was the actual search warrant he executed on May 31, 2007, at Lawson's shop.  We find no merit to Lawson's argument.  A copy of an unsigned warrant entered into evidence does not establish that a proper, signed warrant was not obtained prior to the search of Lawson's property.

¶9.     Lawson also argued that he could only give law enforcement the authority to search his residence, as he did not own or control the surrounding premises, such as the shop behind his house.  The search warrant described the area to be searched as "the residence at 49 CR 7149, Booneville, MS," and included "any and all sheds, vehicles, and curtlidge thereto." The warrant stated the person who occupied and controlled the location was "Henry Lawson and persons unknown."  The Fourth Amendment and the Mississippi Constitution do not require that the affidavit or warrant name the "owner" of the property to be searched, just that it particularly describe the place to be searched, and the person or things to be seized. *Williams v. State*, 583 So. 2d 620, 624 (Miss. 1991).  Whether or not Lawson owned or controlled the area of the search warrant does not affect the validity of the warrant.  The trial court did not abuse its discretion in denying Lawson's motion in limine.

**II.     AMENDMENT TO INDICTMENT**

¶10.    The State filed a motion to amend Lawson's indictment, four days before trial, to show his status as a habitual offender under Mississippi Code Annotated section 99-19-81 (Supp. 2014).  At the pretrial hearing the day before trial, the State entered into evidence

6

three documents filed in the United States District Court for the Northern District of Mississippi on December 7, 1990, to show Lawson's prior convictions. Each document had a separate case number. State's Exhibit 8 established that Lawson pleaded guilty to four counts of possession and possession with intent to sell a stolen motor vehicle with the VIN removed. Lawson was sentenced to three years for each count. State's Exhibit 9 showed Lawson pleaded guilty to two counts of conspiracy to steal and possess goods, and receipt and possession of goods, from an interstate shipment of freight. Again, Lawson was sentenced to three years for each count. Finally, State's Exhibit 10 demonstrated that Lawson pleaded guilty to one count of removing, obliterating, tampering with, or altering a VIN, receiving five years of probation.

¶11.   Defense counsel argued that the State should be barred from amending the indictment at that late date under Rule 7.09 of the Mississippi Uniform Circuit and County Court Rules, because Lawson would be unfairly surprised and unable to formulate a defense to his habitual-offender status. The trial judge disagreed and allowed the amendment. On appeal, Lawson argues that allowing the State to amend his indictment to include habitual status the day before trial robbed him of seriously considering any possible plea bargain offered by the State, which could use the habitual status as a punishing tool for his not pleading guilty.

¶12.   The standard of review for an amendment to an indictment is relatively broad. *Spears v. State*, 942 So. 2d 772, 773 (¶5) (Miss. 2006) (citing *Peterson v. State*, 671 So. 2d 647, 652 (Miss. 1996) (overruled on other grounds)). As it is a question of law, it is reviewed de novo. *Id*. Rule 7.09 allows indictments to be amended "to charge the defendant as an habitual offender or to elevate the level of the offense where the offense is one which is subject to

7

enhanced punishment for subsequent offenses and the amendment is to assert prior offense justifying such enhancement . . . ." URCCC 7.09. Such an amendment is allowed as long as "the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised." *Id.*

¶13. This Court has held that an amendment requested on the day of trial to add an enhanced penalty was proper where the defendant was "apprised of the charge pending against him, was not unfairly surprised, and was afforded a fair opportunity to present his defense." *Wells v. State*, 57 So. 3d 40, 48 (¶27) (Miss. Ct. App. 2011) (citing *Williams v. State*, 766 So. 2d 815, 816 (¶5) (Miss. Ct. App. 2000)). It is well established that "a change in the indictment is permissible if it does not materially alter facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant's case." *Williams*, 766 So. 2d at 816-17 (¶5) (quoting *Griffin v. State*, 584 So. 2d 1274, 1275-76 (Miss. 1991)). Amending an indictment to charge a defendant as a habitual offender only affects sentencing and not the substance of the charged offenses, and thus is permissible. *Id.* at 817 (¶5) (citing *Burrell v. State*, 726 So. 2d 160, 162 (Miss. 1998)). The test for whether an amendment to an indictment will prejudice the defense is whether the initial defense will remain available after the amendment. *Id.* at (¶7) (citing *Griffin*, 584 So. 2d at 1276).

¶14. Here, the amendment is to form rather than substance. No material facts were altered as to the essence of the offense; the amendment only impacted sentencing. Nor did the amendment change Lawson's defense in any way, or unfairly surprise him. While the supreme court has held that an amendment to an indictment to reflect habitual-offender status

8

after conviction is an unfair surprise, this amendment was before trial. *See Gowdy v. State*, 56 So. 3d 540, 545 (¶19) (Miss. 2011) (defendant not charged as habitual offender for DUI until after guilty verdict, and before trial State was also allowed to add additional crime to elevate defendant's conviction). Lawson could not have been "surprised" at the habitual-status amendment, as certified copies of his prior indictments were provided to him during discovery two years before trial, making Lawson aware of the State's intentions. Accordingly, the amendment to the indictment was not untimely.

¶15. Lawson also argues that the trial court erred in allowing the State to amend his indictment because the State did not prove that the charges arose out of separate incidents at different times, as required by the statute. Section 99-19-81 provides:

> Every person convicted . . . of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately *brought and arising out of separate incidents at different times* and . . . sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, . . . shall be sentenced to the maximum time of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

(Emphasis added). At trial, however, Lawson did not object to the amendment on these grounds, but to the timing of the motion under Uniform Rule of Circuit and County Court 7.06. It is well established that an objection on one ground waives all other unspecified grounds. *DeSalvo v. State*, 776 So. 2d 704, 710 (¶20) (Miss. Ct. App. 2000) (citing *Carter v. State*, 722 So. 2d 1258, 1261 (¶13) (Miss. 1998)). Lawson did not object during sentencing either. Accordingly, this argument is procedurally barred. Further, Lawson's argument lacks merit. Sentences handed down on the same day are not indicative of counts arising from the same incident, as Lawson argues. Three separate cause numbers were issued

9

for each conviction – CRE89-70-B, CRE-90-47-B, and CRE90-48-B – giving further circumstantial evidence that two of the three crimes were committed in different years. This issue is without merit.

### III.   WEIGHT AND SUFFICIENCY OF THE EVIDENCE

¶16.   Lawson claims that the weight and sufficiency of the evidence were inadequate to support his conviction for Count II of the four-count indictment.  Count II charged Lawson with "wilfully, unlawfully and feloniously possess[ing] a vehicle with an altered or mutilated Vehicle Identification Number, being a white Chevrolet rollback [VIN] 1GDJC34KOME509051, with the knowledge that said [VIN] of the motor vehicle was altered, counterfeited, defaced, destroyed, disguised, falsified, forged, obliterated or removed . . . ." Lawson argues he had no criminal intent in possessing the Chevy rollback vehicle, which he states was used to carry his racing vehicles to events.

¶17.   A motion for a directed verdict and a motion for a judgment notwithstanding the verdict  challenge the sufficiency of the evidence. *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005).  "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)).  All credible evidence consistent with guilt will be accepted as true. *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993).

¶18.   A motion for a new trial challenges the weight of the evidence.  The reviewing court will not disturb the verdict unless allowing "it to stand would sanction an unconscionable injustice."  *Bush*, 895 So. 2d at 844 (¶18).  The evidence will be viewed in the light most

10

favorable to the verdict. *Id.* The role of the jury is to assess the weight and credibility of the evidence and resolve any conflicts in the evidence. *Latiker v. State*, 918 So. 2d 68, 73 (¶12) (Miss. 2005).

¶19. Lawson was indicted under section 63-25-5(3)(a), which reads:

> Any person who buys, disposes, sells, transfers or possesses a motor vehicle or motor vehicle part with the knowledge that the vehicle identification number of the motor vehicle or motor vehicle part has been altered, counterfeited, defaced, destroyed, disguised, falsified, forged, obliterated or removed shall be guilty of a felony.

The evidence presented at trial shows a rational trier of fact could have found the elements of the charge beyond a reasonable doubt. During the June 23, 2009 search of Lawson's property, Sheriff Tolar found "automotive parts scattered all over" the basement, such as steering columns, air bags, and even a motor. Saw blades used to cut up vehicles were lying on the floor of the basement. Law enforcement also found a boat registration number on an adhesive strip. The number related to a boat belonging to Jeff Sanders of Tupelo, Mississippi. The Tupelo Police Department discovered that Jeff Sanders was also the victim of an automotive theft of a 2008 white Z-71 4X4 GMC truck. Sanders's insurance company provided the ignition key to his stolen vehicle, which Sheriff Tolar used to unlock a glove-compartment box found in Lawson's basement. Sheriff Tolar also found a tailgate and bumper during the search, and was able to unlock the tailgate lock and the bumper lug-lock for a spare tire with this key, indicating all of these parts came from Sanders's stolen truck. Also found in Lawson's junkyard was the bed of a white Z-71 4X4 truck consistent with the make and model of Sanders's truck. Sheriff Tolar also testified that a confidential informant told him that a white rollback truck which Lawson had been seen driving was built from a

11

cut truck. The VIN on the rollback truck showed the truck should have been a two-door standard-cab truck, while the truck was actually an extended-cab truck. The VIN also showed the truck should have been a GMC but the emblems outside the vehicle indicated it was a Chevrolet. A rational jury could infer from this evidence that the rollback truck was put together as a result of a chop shop, made from a cut-up truck that belonged to Sanders. The tag of the vehicle was registered to Lawson's race-car business with his residence's address. As stated earlier, pieces of the stolen truck were found inside Lawson's basement, as well as on the property outside of his residence, showing Lawson's possession of the truck.

¶20. The facts and circumstances also establish Lawson's criminal intent. "Intent, being a state of mind, is rarely susceptible of direct proof, but ordinarily must be inferred from the acts and conduct of the party and the facts and circumstances attending them." *Jones v. State*, 920 So. 2d 465, 472 (¶17) (Miss. 2006) (quoting *Harris v. State*, 642 So. 2d 1325, 1327 (Miss. 1994)). The evidence was more than sufficient to support the verdict, and allowing the verdict to stand does not sanction an unconscionable injustice.

¶21. **THE JUDGMENT OF THE CIRCUIT COURT OF PRENTISS COUNTY OF CONVICTION OF POSSESSION OF A VEHICLE WITH AN ALTERED OR MUTILATED VEHICLE IDENTIFICATION NUMBER AND SENTENCE AS A HABITUAL OFFENDER OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION AND TO PAY A FINE OF $5,000 WITH $4,000 SUSPENDED, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PRENTISS COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**

12